UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

In re ASHANTI GOLDFIELDS
SECURITIES LITIGATION

MEMORANDUM AND ORDER

Civil Action No.
CV-00-717 (DGT)

---------------------------------X

TRAGER, District Judge

    Shareholders in Ashanti Goldfields Company Limited ("Ashanti") brought this action against the company and two of its officers ("defendants") alleging defendants made fraudulent statements in violation of § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder and § 20(a) of the 1934 Act. On June 8, 2005, plaintiffs submitted a motion for settlement along with a signed copy of their negotiated settlement agreement dated June 1, 2005. Plaintiff supplemented the June 8th motion and filed an additional motion for attorneys' fees, legal expenses and lead plaintiffs' reasonable costs and expenses (the "fees and expenses"). A settlement fairness hearing was held on November 2, 2005.

    For the following reasons the settlement is approved, counsel is awarded 27.5% of the gross settlement fund in fees and $1,377,825.93 in reimbursement of expenses, and the lead plaintiffs are awarded $7,219.00.

**Background**

This matter's substantive and procedural history has been throughly reviewed in its two previous written opinions. <u>In re Ashanti Goldfields Securities Litigation</u>, 184 F. Supp. 2d 247 (E.D.N.Y. 2002); <u>In re Ashanti Goldfields Securities Litigation</u>, No. 00-cv-717, 2004 WL 626810 (E.D.N.Y. March 30,2004). Familiarity with those decisions is assumed and the background will not be repeated here.

**Discussion**

**(1)**

**Fairness of the Settlement**

The parties reached the current settlement after several sessions with two different mediators. (Decl. Of Paul D. Young in Supp. of Proposed Settlement ("Young Decl.") at ¶ 3.) The stipulated settlement agreement (the "agreement") creates a cash settlement fund of $15 million. <u>Id.</u>

In aggregate, plaintiffs mailed 28,935 notices of proposed settlement to potential claimants. (Pl. Ex. D Aff. Of Jose C. Fraga at ¶ 6.) According to the notice, the last day to file claims was October 31, 2005 and as of November 2, 2005, 1,034 claims had been filed. (Settlement Fairness Hr'g Tr., 3, Nov. 2, 2005.) Of those claims, the Claims Administrator determined 742 were valid. <u>Id.</u> The recognized loss from the valid claims

totals $28,338,125.  Id.  Nine class members opted out of the settlement; no class member filed an objection to the settlement.  (Young Decl. ¶ 5.)

Under Federal Rule of Civil Procedure 23(e) any class action settlement must receive court approval.  Fed. R. Civ. P. 23(e)(1)(A).  District courts have significant discretion in approving settlements, Joel A. v. Giuliani, 218 F.3d 132, 139 (2d Cir. 2000), though, a general policy favoring settlement exists, especially in class actions.  Bano v. Union Carbide Corp., 273 F.3d 120, 129-130 (2d Cir. 2001).  Therefore, since no objections have been filed and very few claimants have opted out, the settlement is deemed a fair and adequate resolution to the present matter.  Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.").

**(2)**

**Requested Fees and Expenses**

As part of the motion to approve the settlement, the three firms that represent plaintiffs requested their attorneys' fees and expenses be paid from the settlement fund.  Counsel asked for one-third the gross settlement fund, or $5 million, in attorneys fees.  (Pl. Mem. L. in Support of Joint Application for Attorneys' Fees ("Pl. Fees Mem.") at 2.)  To support this figure,

counsel states that they spent 10,575 hours representing the class. (Pl. Fees Mem. at 7.) Based upon their current hourly rates the lodestar value for their services comes to $4,069,824.60. Id. Counsel argues that their request of $5 million is reasonable since it represents approximately 1.23 times their lodestar value.

In addition to attorneys fees, counsel also requests reimbursement from the common fund for $1,377,825.93 in expenses. (Pl. Fees Mem. at 2, 15.) Therefore, in total, counsel has requested $6,377,825.93, or approximately 42%, of the total recovery in fees and expenses.

**(3)**

**The Standard for Awarding Attorneys' Fees**

Where a class action settlement creates a common fund the plaintiffs' attorneys "are entitled to a reasonable fee - set by the court - to be taken from the fund." Goldberger v. Integrated Res., Inc., 209 F.3d 43, 47 (2d Cir. 2000). This fee is limited to the amount the district court, in its discretion, deems to be reasonable under the "unique circumstances" of the case. Id.; In re Holocaust Victim Assets Litig., 424 F.3d 150, 157 (2d Cir. 2005). In a class action it is impractical if not impossible for the class members to negotiate their attorney's fee; therefore, the court must award the fee "with moderation and a jealous regard to the rights of those who are interested in the fund."

City of Detroit v. Grinnell Corp., 495 F.2d 448, 469 (2d Cir. 1974).

The trend in the Second Circuit has been to express the attorneys' fees as a percentage of the total settlement.[1] Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005); In re Elan Sec. Litig., 385 F. Supp.2d 363, 373 (S.D.N.Y. 2005). What percentage is reasonable is determined by reviewing six factors set out in Goldberger v. Integrated Resources, Inc.:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

Goldberger, 209 F.3d at 50. Under this method the lodestar value acts as a "cross check" and the hours submitted by the attorneys are reviewed but not exhaustively scrutinized. Id.

**(4)**

**Application of the Goldberger Factors**

**a. Labor, Complexity and Magnitude of the case**

The first two Goldberger factors, the time and labor expended by counsel and the magnitude and complexities of the

---

[1] In Goldberger v. Integrated Resources, Inc., the Second Circuit held that a district court can use either the lodestar with a multilayer or percentage methods to express the fee. 209 F.3d at 50. Since then many courts have chosen the percentage method because it "directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005).

5

litigation, can be examined together.  This matter has been actively litigated; indeed, as noted, counsel has performed over 10,000 hours of work.

Counsel claims that this matter is complex simply because it is a securities claim. (Pl. Fees Mem. at 9.) They cite to the general difficulties presented in proving scienter and dealing with the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). (Pl. Fees Mem. 9.) Relative to other securities cases, this case did not present unusually complex issues. See In re Bristol-Myers Squibb Sec. Litig., 361 F. Supp. 2d 229, 234 (S.D.N.Y. 2005)(evaluating the complexity of the matter relative to other securities actions); accord FTR Consulting Group, Inc v. Advantage Fund II Ltd., No. 02-Civ-8608, 2005 WL 2234039 at *5 (S.D.N.Y. Sept. 14, 2005).  Scienter is not an unusual requirement and indeed must be proven in every securities fraud action. In re Bristol-Myers Squibb Sec. Litig., 361 F. Supp. 2d at 234 (citing Goldberger, 209 F.3d at 54).  In the present matter counsel showed scienter by simply relying on strong circumstantial evidence from public statements and records to prove conscious misbehavior. In Re Ashanti, 184 F. Supp.2d at 269-70. See also In re Bristol-Myers Squibb, 361 F. Supp. 2d at 234 (discounting the matter's complexity because the plaintiff merely relied on public statements and the public record to create the complaint).  Counsel should also not be rewarded based

on the magnitude of this matter; neither the class nor the award are especially vast. Compare In re Visa Check/Mastermoney Antitrust Litig., 297 F. Supp. 2d 503, 523 (E.D.N.Y. 2003), aff'd, Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96 (2d Cir. 2005) (describing the complex issues involved in litigating a multi-million member class action); In re Elan, 385 F. Supp.2d at 371 (awarding fees in a 400,000 member class).

This matter did involve significant international concerns and the admittedly dense arena of gold derivative exchanges. These issues may justify the number of hours cited by counsel, but, they do not warrant any increased share of the common fund beyond the lodestar figure.

**B. Risk of the Litigation**

Risk of litigation is often cited as the "most important Goldberger factor." In re Bristol-Myers Squibb, 361 F. Supp. 2d at 233; Goldberger, 209 F.3d at 54. In assessing their risk, counsel simply argues that because their fee was contingent they are entitled to a greater share of the common fund. (Pl. Fees Mem. 11-13.) However, "[t]hat is not the law in this Circuit." Goldberger, 209 F.3d at 54. District courts evaluate risk on a spectrum with other similar matters. Id.; In re Bristol-Myers Squibb, 361 F. Supp. 2d at 234. Counsel's argument does not "go to the merits of [this] particular case," but rather applies to nearly every class action taken on contingency. In re Sterling

7

Foster & Co., Inc., Sec. Litig., 238 F. Supp. 2d 480, 488 (E.D.N.Y. 2002). In truth, the vast majority of securities class actions settle; hence counsel actually had a minimal risk of substantial losses based on the nature of this matter.[2] Goldberger, 209 F.3d at 52. Therefore, since counsel only relies on the bare nature of the matter to show risk, they have not shown why they are entitled to an increased portion of the settlement fund.

**c. The Quality of Representation**

"The 'quality of representation' factor is designed to reward 'particularly resourceful' legal work that 'secures a substantial benefit ... with a minimum of time invested,' or to decrease 'the objectively determined fee where the benefit produced does not warrant awarding the full value of the time expended.'" Fears v. Wilhelmina Model Agency, Inc., No. 02-Civ-4911, 2005 WL 1041134 *8 (S.D.N.Y. May 5, 2005) (citing In re Agent Orange Prod. Liab. Litig., 611 F. Supp. 1296, 1313 (E.D.N.Y. 1985)). In this regard, the quality of the representation is best measured by the results achieved. Goldberger, 209 F.3d at 55. A court, though, should not

---

[2] The appeal in Goldberger was argued by Melvyn I. Weiss, named partner in Milberg Weise Bershad & Schulman, LLP, one of the three counsels for the plaintiff in this matter. During oral arguments in Goldberger Mr. Weiss conceded that "losses in these cases are 'few and far between' and that they achieve 'a significant settlement although not always a big legal fee, in 90% of the cases [they] file.'" Goldberger, 209 F.3d at 52.

8

necessarily award an increased fee where counsel simply displays the general level of skill expected. In re Agent Orange, 611 F. Supp. at 1313.

In the present matter, counsel argues that the settlement's guaranteed recovery of 8.8% of plaintiff's expert's estimated $171 million maximum possible recovery is an "extraordinary result." (Pl. Fees Mem. at 11; Pl. Mem. of L. in Support of the Final Approval of Settlement at 17.) Even though this value is a fair settlement, it is far from an "extraordinary" settlement. The 8.8% recovery is simply within the normal or acceptable range for such a case. See Kurzweil v. Philip Morris Co., Inc, Nos. 94 Civ. 2373, 94 Civ. 2546, 1999 WL 1076105 at *2 (S.D.N.Y. Nov. 30, 1999) (stating that the normal range for recovery in securities class action is between 7% and 15% of the total damages); In re Lease Oil Antitrust Litig. (No. II ), 186 F.R.D. 403, 434 n.47 (S.D. Tex. 1999) (citing various studies showing the average recovery in securities litigation cases to be between 4% and 14% of the total loss). See e.g. In re Arakis Energy Corp. Sec. Litig., No. 95 CV 3431, 2001 WL 1590512 at *13 (E.D.N.Y. Oct. 31, 2001)(commending counsel for recovering 23% of possible provable damages); In re Elan, 385 F. Supp.2d at 375 (20.8%). Additionally, after awarding just plaintiffs counsels' requested expenses, the remaining $13.6 million fund will not even cover half the $28 million recognized total loss.

9

Having overcome the two motions to dismiss, the essential theory of this case, striped of its unnecessary argument, was quite triable. See In re Ashanti, 184 F. Supp. 2d 247 (discussing the rational for denying defendant's motion to dismiss). Had this matter gone to trial it probably would have resulted in a substantially greater value to the class members. Therefore, the quality of representation in this matter, while adequate, was not "extraordinary" and does not deserve to be rewarded with a percentage of the fund significantly greater than the lodestar value.

**d. The requested fee in relation to the settlement**

Counsel contends that the requested one-third fee is reasonable simply because it is in line with other class action cases. (Pl. Fees Mem. at 5 (citing to matters all decided before Goldberger).) However, attorneys' fees are awarded based on the characteristics of the particular case and not just a standard "benchmark." Goldberger, 209 F.3d at 47, 51-2 (rejecting use of "benchmark" percentages from other cases to determine attorneys' fees).

In addition to their fee application, counsel also requests expense reimbursement of approximately $1.38 million, which equates to 9% of the fund. (Pl. Fees Mem. At 16.) Nothing in the record suggests counsel's request is anything but a petition for appropriate expenses. However, counsel has some control over

expenses and as such, where the expenses represent a significant portion of the settlement fund, they should be evaluated along with the fees requested. See Fears, 2005 WL 1041134 at *9 (taking into account fee and expenses, which combined represented over 40% of the fund, when evaluating the fee's relation to the settlement); 15 U.S.C. § 78u-4(a)(6) (requiring both fees and expenses to not exceed a reasonable percentage of the damages actually paid to class members). District courts must both apply a principle of moderation to the fee awards and jealously guard the rights of class members. Grinnell, 495 F.2d at 469. As a result, it would be irresponsible to not take note that counsel's full requests amount to 42% of the total settlement fund. This high total request, cuts against counsel's argument that one-third is an appropriate fee.

**e. Public Policy Considerations**

A strong public policy concern exists for rewarding firms for bringing successful securities litigation. See In re Bristol-Myers Squibb, 361 F. Supp. 2d at 236 ("public policy supports granting attorneys fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC"); In re Visa Check/Mastermoney, 297 F. Supp. 2d at 524 ("The fees awarded must be reasonable, but they must also serve as an inducement for lawyers to make similar efforts in the future."). However, that

11

reason alone does not automatically justify plaintiff's one-third request.

**f. What Fee is Appropriate**

In <u>Goldberger</u> the Second Circuit called the lodestar figure an appropriate "baseline." <u>Goldberger</u>, 209 F.3d at 50. Subsequent cases have generally not gone below the lodestar value unless that value represented an unreasonable portion of the settlement. See e.g. <u>In re Sterling Foster & Co.</u>, 238 F. Supp. 2d at 488-490 (where the lodestar represented 72% of the settlement). Counsel, however, has not shown why they are entitled to significantly more than that value. As a result the three firms representing plaintiffs in this matter shall receive 27.5% of the gross settlement or $4.125 million as fee for their services.

**(5)**

**Reimbursement of Litigation Expenses**

Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses. <u>Miltland Raleigh-Durham v. Myers</u>, 840 F. Supp. 235, 239 (S.D.N.Y.1993) (quoting <u>Reichman v. Bonsignore, Brignati & Mazzotta, P.C.</u>, 818 F.2d 278, 283 (2d Cir. 1987)). In the present matter counsel requests $1,377,825.93 in expenses. By far the largest expense, totaling over $500,000, was for the services of expert witnesses. (Pl. Fees Mem. At 16.) This is not unusual in securities litigation actions. <u>In re Visa</u>

12

Check/Mastermoney, 297 F. Supp. 2d at 525.

Additionally, counsel requests the lead plaintiffs be reimbursed $7,219 for their "reasonable costs and expenses ... directly relating to the representation of the class." 15 U.S.C. § 78u-4(a)(4). Courts in this Circuit regularly award such costs so as to encourage representatives to actively participate in the litigation process. Hicks v. Stanley, No. 01-Civ-10071, 2005 WL 2757792 *10 (S.D.N.Y. Oct. 24, 2005)

**Conclusion**

For the forgoing reasons, the settlement is declared fair and reasonable. Plaintiffs' claims are dismissed with prejudice. Counsel in this matter is granted attorneys fees in the form of 27.5% of the gross settlement fund and $1,377,825.93 in reasonable fees and expenses. Lead plaintiffs are also awarded $7,219 from the settlement fund.

Dated: Brooklyn, New York
       November 15, 2005

                                          SO ORDERED:


                                          _____/s/_____
                                          David G. Trager
                                          United States District Judge